**TIN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| ACCEPTANCE INDEMNITY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| V. | ) ) | Case No.: |
| RED DOT ARMS, INC., KEELEY ROBERTS, JASON ROBERTS, LORENA REBOLLAR SEDANO, RICARDO TOLEDO, PETRA TOLEDO, JOSEFINA TOLEDO, ALEJO TOLEDO, AMELIA TENORIO, ANTONIA MEGLAR, BRUCE SUNDHEIM, PETER STRAUS, JONATHON STRAUS, SYLVIA VERGARA, LIZET MONTEZ, GABRIELA VERGARA, LAUREN BENNETT, MICHAEL BENNETT, TERRIE BENNETT, JEFFREY BENNETT, DEBORAH SAMUELS, ELLIOT SAMUELS, MIRNA RODRIGUEZ, OSCAR SANCHEZ, MICHAEL ZEIFERT, CHRISTINE ZEIFERT, ELIZABETH TURNIPSEED, and JOSHUA CHUPACK | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Acceptance Indemnity Insurance Company ("Acceptance"), by and through its undersigned counsel, as and for its Complaint for Declaratory Judgment against Defendants Red Dot Arms, Inc., Keeley Roberts, Jason Roberts, Lorena Rebollar Sedano, Ricardo Toledo, Petra Toledo, Josefina Toledo, Alejo Toledo, Amelia Tenorio, Antonia Meglar, Bruce Sundheim, Peter Straus, Jonathon Straus, Sylvia Vergara, Lizet Montez, Gabriela Vergara, Lauren Bennett, Michael Bennett, Terrie Bennett, Jeffrey Bennett, Deborah Samuels, Elliot Samuels, Mirna Rodriguez, Oscar Sanchez, Michael Zeifert, Christine Zeifert, Elizabeth Turnipseed, Joshua Chupack, states as follows:

## **NATURE OF THE ACTION**

1.     This is an action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201. In this action, Acceptance seeks a determination of its rights and obligations under an insurance policy issued by it to Red Dot Arms, Inc. ("Red Dot Arms") in connection with underlying lawsuits (the "Underlying Actions") filed against Red Dot Arms by Keeley Roberts, Jason Roberts, Lorena Rebollar Sedano, Ricardo Toledo, Petra Toledo, Josefina Toledo, Alejo Toledo, Amelia Tenorio, Antonia Meglar, Bruce Sundheim, Peter Straus, Jonathon Straus, Sylvia Vergara, Lizet Montez, Gabriela Vergara, Lauren Bennett, Michael Bennett, Terrie Bennett, Jeffrey Bennett, Deborah Samuels, Elliot Samuels, Mirna Rodriguez, Oscar Sanchez, Michael Zeifert, Christine Zeifert, Elizabeth Turnipseed and Joshua Chupak (collectively, the "Underlying Claimants").

## **JURISDICTION AND VENUE**

2.     This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

3.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as this action is between citizens of different states and the amount in controversy exceeds $75,000.

4.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b), as Keeley Roberts, Jason Roberts, Lorena Rebollar Sedano, Ricardo Toledo, Petra Toledo, Josefina Toledo, Alejo Toledo, Amelia Tenorio, Antonia Meglar, Bruce Sundheim, Peter Straus, Jonathon Straus, Sylvia Vergara, Lizet Montez, Gabriela Vergara, Lauren Bennett, Michael Bennett, Terrie Bennett, Jeffrey Bennett, Debora Samuels, Elliot Samuels, Mirna Rodriguez, Oscar Sanchez, Michael Zeifert, Christine Zeifert, Elizabeth Turnipseed and Joshua Chupak reside in this district.

5.     Plaintiff Acceptance is a corporation organized and existing under the laws of the state of Nebraska, with its principal place of business in the state of North Carolina.  At all relevant times, Acceptance was authorized to conduct business in the State of Illinois.

6.     Defendant Red Dot Arms is an Illinois corporation with its principal place of business in Round Lake Beach, Illinois.

7.     Defendant Keeley Roberts is a resident and citizen of Lake County, Illinois.

8.     Defendant Jason Roberts is a resident and citizen of Lake County, Illinois.

9.     Defendant Lorena Rebollar Sedano is a resident and citizen of Lake County, Illinois.

10.    Nicolas Toledo was a resident of Lake County, IL and thus his estate is a resident of Lake County, Illinois.

11.    Defendant Ricardo Toledo is a resident and citizen of Lake County, Illinois.

12.    Defendant Petra Toledo is a resident and citizen of Lake County, Illinois.

13.    Defendant Josefina Toledo is a resident and citizen of Lake County, Illinois.

14.    Defendant Alejo Toledo is a resident and citizen of Lake County, Illinois.

15.    Defendant Amelia Tenorio is a resident and citizen of Lake County, Illinois.

16.    Defendant Antonia Meglar is a resident and citizen of Lake County, Illinois.

17.    Jacqueline Sundheim was a resident and citizen of Lake County, Illinois and thus her estate is a resident of Lake County, Illinois.

18.    Defendant Bruce Sundheim is a resident and citizen of Lake County, Illinois.

19.    Stephen Straus was a resident and citizen of Lake County, IL and thus his estate is a resident of Lake County, Illinois.

20.    Defendant Peter Straus is a resident and citizen of Lake County, Illinois.

21.     Defendant Jonathon Straus is a resident and citizen of Lake County, Illinois.

22.     Defendant Sylvia Vergara is a resident and citizen of Lake County, Illinois.

23.     Defendant Lizet Montez is a resident and citizen of Lake County, Illinois.

24.     Defendant Gabriela Vergara is a resident and citizen of Lake County, Illinois.

25.     Defendant Lauren Bennett is a resident and citizen of Lake County, Illinois.

26.     Defendant Michael Bennett is a resident and citizen of Lake County, Illinois.

27.     Defendant Terrie Bennett is a resident and citizen of Lake County, Illinois.

28.     Defendant Jeffrey Bennett is a resident and citizen of Lake County, Illinois.

29.     Defendant Deborah Samuels is a resident and citizen of Lake County, Illinois.

30.     Defendant Elliot Samuels is a resident and citizen of Lake County, Illinois.

31.     Defendant Mirna Rodriguez is a resident and citizen of Lake County, Illinois

32.     Defendant Oscar Sanchez is a resident and citizen of Lake County, Illinois.

33.     Defendant Michael Zeifert is a resident and citizen of Lake County, Illinois.

34.     Defendant Christine Zeifert is a resident and citizen of Lake County, Illinois.

35.     Defendant Elizabeth Turnipseed is a resident and citizen of Lake County, Illinois.

36.     Defendant Joshua Chupak is a resident and citizen of Lake County, Illinois.

37.     The Underlying Actions are pending in the United States District Court for the Northern District of Illinois.

38.     Acceptance issued an insurance policy to Red Dot Arms.

39.     The scope of the coverage available to Red Dot Arms is governed by the terms, conditions, and exclusions of the policy.

40.     Plaintiff Acceptance does not assert any claim against Defendants Keeley Roberts, Jason Roberts, Lorena Rebollar Sedano, Ricardo Toledo, Petra Toledo Josefina Toledo, Alejo

Toledo, Amelia Tenorio, Antonia Meglar, Bruce Sundheim, Peter Straus, Jonathon Straus, Sylvia Vergara, Lizet Montez, Gabriela Vergara, Lauren Bennett, Michael Bennett, Terrie Bennett, Jeffrey Bennett, Debora Samuels, Elliot Samuels, Mirna Rodriguez, Oscar Sanchez, Michael Zeifert, Christine Zeifert, Elizabeth Turnipseed and Joshua Chupak  in this Complaint, and these Defendants have been named in this action solely as necessary and indispensable parties.

## THE UNDERLYING ACTIONS

41.     On or about September 27, 2022, Keeley and Jason Roberts filed a lawsuit styled, *Keeley Roberts, individually and as parent and next friend of C.R. and L.R., and Jason Roberts, individually and as parent and next friend of C.R. and L.R. v. Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, Smith & Wesson, Inc., Budsgunshop.com, LLC, Red Dot Arms Inc., Robert Crimo, Jr., Robert Crimo, III*,  Case No. 22 LA 00000487 in the Circuit Court of Lake County, Illinois. (the "Roberts Complaint"). A true and correct copy of the Roberts Complaint is attached hereto as Exhibit A. On or about November 7, 2022,  this lawsuit was removed to the United States District Court for the Northern District of Illinois, Case No. 22 cv 6169.

42.     On September 27, 2022, Lorena Rebollar Sedano filed a complaint styled, *Lorena Rebollar Sedano v. Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, Smith & Wesson, Inc., Budsgunshop.com LLC, Red Dot Arms, Inc., Robert Crimo, Jr., and Robert Crimo*, III, Case No. 22 LA 00000490 in the Circuit Court of Lake County, Illinois (the "Sedano Complaint"). A true and correct copy of the Sedano Complaint is attached hereto as Exhibit B. On or about November 7, 2022,  this lawsuit was removed to the United States District Court for the Northern District of Illinois, Case No. 22 cv 6183.

43.     On September 27, 2022, Ricardo, Petra, Josefina, and Alejo Toledo filed a complaint styled, *Ricardo Toledo, individually and as Special Administrator of the Estate of*

*Nicolas Toleda, deceased, Petra Toleda, Josefina Toledo, and Alejo Toledo v. Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, Smith & Wesson, Inc., Budsgunshop.com, Red Dot Arms, Inc., Robert Crimo, Jr., and Robert Crimo, III*, Case No. 22LA00000495 in the Circuit Court of Lake County, Illinois (the "Toledo Complaint"). A true and correct copy of the Toledo Complaint is attached hereto as Exhibit C. On or about November 7, 2022,  this lawsuit was removed to the United States District Court for the Northern District of Illinois, Case No. 22 cv 6191.

44.     On September 27, 2022, Amelia Tenorio and Antonia Meglar filed a complaint styled, *Amelia Tenorio, individually and as parent and next-friend of C.M., and Antonio Meglar, individually and as parent and next friend of C.M., v. Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, Smith & Wesson, Inc., Budsgunshop.com, LLC, Red Dot Arms, Inc., Robert Crimo, and Robert Crimo, III*, Case No. 22 LA00000493 in the Circuit Court of Lake County, Illinois (the "Tenorio Complaint").  A true and correct copy of the Tenorio Complaint is attached hereto as Exhibit D.  On or about November 7, 2022,  this lawsuit was removed to the United States District Court for the Northern District of Illinois, Case No. 22 cv 6186.

45.     On September 27, 2022, Bruce Sundheim filed a complaint styled, *Bruce Sundheim, as Special Administrator of the Estate of Jacqueline Sundheim, deceased, v. Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, Smith & Wesson, Inc., Budsgunshop.com, LLC, Red Dot Arms, Inc., Robert Crimo, Jr., and Robert Crimo, III*, Case No. 22 LA00000488  in the Circuit Court of Lake County, Illinois (the "Sundheim Complaint"). A true and correct copy of the Sundheim Complaint is attached hereto as Exhibit E. On or about November 7, 2022,  this lawsuit was removed to the United States District Court for the Northern District of Illinois. Case No. 22 cv 6178.

46.     On September 27, 2022, Peter and Jonathan Straus filed a complaint styled, *Peter Straus and Jonathon Straus as Co-Administrators of the Estate of Stephen Straus, deceased v. Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, Smith & Wesson, Inc., Budsgunshop.com, LLC, Red Dot Arms, Inc., Robert Crimo, Jr., and Robert Crimo, III*, Case No. 22LA00000489 in the Circuit Court of Lake County, Illinois (the "Straus Complaint"). A true and correct copy of the Straus Complaint is attached hereto as Exhibit F. On or about November 7, 2022, this lawsuit was removed to the United States District Court for the Northern District of Illinois, Case No. 22 cv 6181.

47.     On September 27, 2022, Sylvia and Gabriela Vergara and Lizet Montez filed a complaint styled, *Sylvia Vergara, Lizet Montez, and Gabriela Vergara, v. Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, Smith & Wesson, Inc., Budsgunshop.com, LLC, Red Dot Arms, Inc., Robert Crimo, Jr., and Robert Crimo, III*, Case No. 22LA00000494 in the Circuit Court of Lake County, IL. (the "Vergara Complaint"). A true and correct copy of the Vergara Complaint is attached hereto as Exhibit G. On or about November 7, 2022, this lawsuit was removed to the United States District Court for the Northern District of Illinois, Case No. 22 cv 6190.

48.     On September 27, 2022, Lauren, Michael, Terrie, Jeffrey Bennett and Deborah and Elliot Samuels filed a complaint styled, *Lauren Bennett, individually and as parent and next friend of T.B. and W.B., Michael Bennett, individually and as parent and next friend of W.B. and T.B., Terrie Bennett, Jeffrey Bennett, Deborah Samuels, and Elliot Samuels v. Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, Smith & Wesson, Inc., Budsgunshop.com, LLC, Red Dot Arms, Inc., Robert Crimo, Jr., and Robert Crimo, III*, Case No. 22LA00000491 in the Circuit Court of Lake County, Illinois. ("the Bennett Complaint"). A true and correct copy of the Bennett Complaint is attached hereto as Exhibit H. On or about November 7, 2022, this lawsuit was

removed to the United States District Court for the Northern District of Illinois, Case No. 22 cv 6171.

49.    On September 27, 2022, Mirna Rodriguez and Oscar Sanchez filed a complaint styled, *Mirna Rodriguez, individually and as parent and next-friend of J.S., K.S., and O.S., and Oscar Sanchez, individually and as parent and next-friend of J.S., K.S., and O.S. v. Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, Smith & Wesson, Inc., Budsgunshop.com LLC, Red Dot Arms, Inc., Robert Crimo, Jr., and Robert Crimo, III*, Case No. 22 LA00000492 in the Circuit Court of Lake County, Illinois (the "Rodriguez Complaint"). A true and correct copy of the Rodriguez Complaint is attached hereto as Exhibit I. On or about November 7, 2022, this lawsuit was removed to the United States District Court for the Northern District of Illinois, Case No. 22 cv 6185.

50.    On September 27, 2022, Michael and Christine Zeifert filed a complaint styled, *Michael Zeifert, individually and as parent and next-friend of B.R.Z., B.M.Z., K.Z., and L.Z., and Christine Zeifert, individually and as parent and next-friend of B.R.Z., B.M.Z., K.Z., and L.Z. v. Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, Smith & Wesson, Inc., Budsgunshop.com, LLC, Red Dot Arms, Inc., Robert Crimo, Jr., and Robert Crimo, III*, Case No. 22 LA0000496 in the Circuit Court of Lake County, Illinois. (the "Zeifert Complaint"). A true and correct copy of the Zeifert Complaint is attached hereto as Exhibit J. On or about November 7, 2022, this lawsuit was removed to the United States District Court for the Northern District of Illinois, Case No. 22 cv 6193.

51.    On September 28, 2022, Elizabeth Turnipseed filed a complaint styled, *Elizabeth Turnipseed v. Smith & Wesson Brands, Inc., American Outdoor Brands Corporation, Budsgunshop.com LLC, Red Dot Arms, Inc., Robert Crimo III, Robert Crimo, Jr.*, Case No. 22

LA00000497 in the Circuit Court of Lake County, Illinois ( the "Turnipseed Complaint"). A true and correct copy of the Turnipseed Complaint is attached hereto as Exhibit K. On or about November 14, 2022,  this lawsuit was removed to the United States District Court for the Northern District of Illinois, Case No. 22 cv 6359.

52.     On October 12, 2022, Joshua Chupack filed a complaint styled, *Joshua Chupack, individually and as next friend of I.C. v. Smith & Wesson Brands, Inc, American Outdoor Brands Corporation, Budsgunshop.com, LLC, Red Dot Arms Inc., Robert Crimo III, Robert Crimo Jr.,* Case No. 22 LA00000532 in the Circuit Court of Lake County, Illinois. (the "Chupack Complaint"). A true and correct copy of the Chupack Complaint is attached hereto as Exhibit L. On or about November 14, 2022,  this lawsuit was removed to the United States District Court for the Northern District of Illinois, Case No. 22 cv 6361.

53.     The Roberts Complaint, Sedano Complaint, Toledo Complaint, Tenorio Complaint, Sundheim Complaint, Straus Complaint, Vergara Complaint, Bennett Complaint, Rodriguez Complaint, Zeifert Complaint, Turnipseed Complaint, and the Chupack Complaint are referred to, collectively, herein as the "Complaints".

54.     The Complaints allege that on or around July 2020, Bud's Gun Shop sold a Smith & Wesson M&P rifle to Robert Crimo III (the "Shooter") through an online transaction. Ex. A. at ¶ 250, Ex. B at ¶ 241, Ex. C at ¶ 342, Ex. D at ¶ 243, Ex. E at ¶ 273, Ex. F at ¶  273, Ex. G at ¶ 243, Ex. H at ¶ 252, Ex. I at ¶ 243, Ex. J at ¶ 244, Ex. K at ¶ at 192, Ex. L ¶ at 193.

55.     The Complaints further allege that Bud's Gun Shop then shipped the rifle to Red Dot Arms for Red Dot Arms to complete the transfer to the Shooter. Ex. A at ¶256, Ex. B at ¶ 247, Ex. C at ¶ 349, Ex. D at ¶ 249. Ex. E at ¶ 279, Ex. F at ¶ 279, Ex. G at ¶ 249, Ex. H at ¶ 258, Ex. I at ¶ 249, Ex. J at ¶ 250, Ex. K at ¶ 198, Ex. L  ¶ at 199.

56.     The Complaints further allege that the Shooter resided in Highland Park or Highwood, IL. Ex. A at ¶¶ 28, n. 5, 258, Ex. B at¶ ¶  26, n.5, 243,  Ex. C at ¶¶  29, n.5, 344, Ex. D at ¶¶ 28, n.5, 245. Ex. E at ¶¶ 25, n.5, 275,  Ex. F at ¶¶  25, n.5, 275, Ex. G at ¶¶ 28, n. 5, 245, Ex. H at ¶¶ 32, n.5, 254, Ex. I at ¶¶ 28, n.5, 245, Ex. J at ¶¶ 28, n.5, 246, Ex. K at ¶ 194, Ex. L at ¶ 195.

57.     The Complaints further allege that Red Dot Arms transferred the rifle to the Shooter after conducting a background check and verifying the identification of the Shooter. Ex. A at ¶ 257, Ex. B at ¶ 248, Ex. C at ¶ 349 , Ex. D at ¶ 250. Ex. E at ¶ 280, Ex. F at ¶ 280, Ex. G at ¶ 250, Ex. H at ¶ 259, Ex. I at ¶ 250, Ex. J at ¶ 251, Ex. K at ¶ 199, Ex. L at ¶ 200.

58.     The Complaints further allege that Highland Park and Highwood make it illegal to "'manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any assault weapon or large capacity magazine.' Highwood, Ill., Code of Ordinances, Tit. 6 6-7-2(A); Highland Park, Ill., Code of Ordinances, Tit. XIII, 136.005." Ex. A at ¶ 253, Ex. B at ¶ 244, Ex. C at ¶ 345, Ex. D at ¶ 246, Ex. E at ¶ 276, Ex. F at ¶ 276, Ex. G at ¶ 246, Ex. H 255, Ex. I at ¶ 246, Ex. J at ¶ 247, Ex. K at ¶ 195, Ex. L at ¶ 196.

59.     The Complaints allege the rifle purchased by the Shooter is an assault weapon pursuant to both Highland Park and Highwood laws. Ex. A. at ¶254, Ex. B at ¶245 , Ex. C at ¶346, Ex. D at ¶247, Ex. E at ¶277, Ex. F at ¶277, Ex. G at ¶247, Ex. H at ¶256, Ex. I at ¶247, Ex. J at ¶248, Ex. K at ¶196, Ex. L at ¶197.

60.     The Complaints further allege that, despite knowing the Shooter resided in a municipality that prohibited the possession of assault weapons, Red Dot Arms transferred the rifle to the Shooter, thereby knowingly aiding and abetting the violation of the Highland Park and Highwood ordinances. Ex. A at ¶ 259, Ex.  B at ¶ 250, Ex. C at ¶ 351, Ex. D at ¶ 248, Ex. E at ¶ 282, Ex. F at ¶ 278, Ex. G at ¶ 252, Ex. H at ¶ 257, Ex. I at ¶ 252, Ex. J at ¶ 253, Ex. K at ¶ 201,

Ex. L at ¶ 202.

61.     The Complaints further allege Red Dot Arms knowingly violated the National Firearms Act by transferring and selling the rifle without filing out the appropriate transfer forms, getting approval of the ATF forms, paying transfer taxes or registering the firearms. Ex. A at ¶ 261, Ex. B at ¶ 252. Ex. C at ¶ 353, Ex. D at ¶ 254, Ex. E at ¶ 284, Ex. F at ¶ 284, Ex. G at ¶ 254, Ex. H at ¶ 263, Ex. I at ¶ 254, Ex. J at ¶ 255, Ex. K at ¶¶ 203-05, Ex. L at ¶¶ 204-06

62.     The Complaints allege that, on July 4, 2022, the Shooter fired more than 80 rounds into the parade crowd killing seven people and injuring others. Ex. A at ¶ 305-06, 312, Ex. B at ¶¶ 296-7, Ex. C at ¶¶ 485-6, Ex. D at ¶¶ 298-99 Ex. E at ¶¶ 359-60, Ex. F at ¶¶ 359-60, Ex. G, at ¶¶ 298-99, Ex. H at ¶¶ 307-08, Ex. I at ¶¶ 298-99, Ex. J at ¶¶ 299-300, Ex. K at ¶ 210, Ex. L at ¶ 211.

63.     The Complaints further allege the Shooter's conduct was deliberate and outrageous and was conducted with the intent to injure, maim, and kill. Ex. A. at ¶ 314, Ex. B at ¶ 298 Ex. C at ¶ 487, 504, Ex. D at ¶ 300, 307, Ex. E at ¶ 361, Ex. F at ¶ 361, Ex. G at ¶ 300, Ex. H at ¶ 309, Ex. I at ¶ 300, Ex. J at ¶ 301, Ex. K at ¶ 211, Ex. L at ¶ 212.

64.     The Roberts Complaint, Sedano Complaint, Toledo Complaint, Tenorio Complaint, Sundheim Complaint, Straus Complaint, Vergara Complaint, Bennett Complaint, Rodriguez Complaint, Zeifert Complaint bring counts against Red Dot Arms for negligence, aiding and abetting, and negligent and intentional infliction of emotional distress.

65.     The Roberts Complaint, Sedano Complaint, Toledo Complaint, Tenorio Complaint, Sundheim Complaint, Straus Complaint, Vergara Complaint, Bennett Complaint, Rodriguez Complaint, and Zeifert Complaint also contain causes of action for battery.

66.     In addition, the Roberts Complaint, Toledo Complaint, Tenorio Complaint, Vergara

Complaint, Bennett Complaint, Rodriguez Complaint, and Zeifert Complaint also contain causes of action for assault.

67.    The Turnipseed Complaint and the Chupack Complaint allege one count against Red Dot Arms for negligence.

68.    The Turnipseed Complaint and the Chupack Complaint also contain causes of action for assault and battery.

## **THE POLICY**

69.    Acceptance issued Commercial Policy No. LOR-GL-0001247-00 to Red Dot Arms, Inc. for the policy period October 3, 2021 to October 3, 2022 (the "Policy"). A true and correct copy of the Policy is attached as Exhibit M.

70.    The Policy provides a $1,000,000 Each Occurrence and a $2,000,000 General Aggregate limit of liability.  Ex. M at AIIC000021.

71.    Coverage A of the Commercial General Liability Coverage Part (form CG 00 01 04 13) provides, in pertinent part, as follows:

> **SECTION I- COVERAGES**
> **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1. **Insuring Agreement**
>
>   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> ***
>
>   b.  This insurance applies to "bodily injury" and "property damage" only if:
>
>   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; . . .

\*\*\*

Ex. M at AIIC000047.

72. The Policy contains an Outdoor Commercial Definitions and Exclusion Amendment endorsement (the "Outdoor Commercial Endorsement") (form LO 01 19 12 20) which provides, in pertinent part, as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion a. of paragraph 2. Exclusions under **SECTION I - COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is deleted and replaced by:

This insurance does not apply to "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

B. The following exclusions are added to paragraph 2. Exclusions under **SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

\*\*\*

8. "Bodily injury" or "property damage" arising out of any acts committed with a "firearm" or ammunition that is sold, distributed or transferred by any insured where such sale, distribution or transfer is in violation of ATF, federal, state or local laws or regulations for the lawful transfer of a "firearm" or ammunition.

\*\*\*

C. The following definitions are added to **SECTION V-DEFINITIONS**:

"Firearm" means:

  a. Any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive;
  b. The frame or receiver of any such weapon;
  c. Any firearm muffler or firearm silencer; or

    d.   Any destructive device as defined by ATF regulations.

***

Ex. M at AIIC000022.

73.    Coverage B of the Commercial General Liability Coverage Part provides, in pertinent part, as follows:

### COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1.    Insuring Agreement**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

Ex. M at AIIC000052.

74.    The Policy contains an Assault and Battery Exclusion endorsement (form PCG 14 52 07 19) which provides, in pertinent part, as follows:

**ASSAULT AND BATTERY EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

***

The policy is amended as follows:

1. The following exclusion is added to the policy and applies to all coverages:

This Insurance does not apply to any "bodily injury" or "property damage" arising out of any actual or alleged:

    a.   "Assault and battery", including "sexual assault and battery";

14

b.   Failure by any person to prevent, stop any "assault and battery" or "sexual assault and battery" or mitigate any harmful effects of any "assault and battery" or "sexual assault and battery", including:

(1) Failure to notify law enforcement or other persons with authority or ability to prevent, stop or mitigate the harmful effects of any "assault and battery" or "sexual assault and battery"; or

(2) Negligent hiring, placement, training, supervision or retention of any person or organization, including any "employee", "leased worker", "temporary worker" or independent contractor.

2. When this endorsement applies, Exclusion a. Expected or Intended Injury is deleted and replaced by the following:

This insurance does not apply to "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

3. The following definitions are added to the policy:

"Assault and battery" means:

a.   Any negligent or intentional physical contact with another without consent; or

b.   Any threat or attempt to inflict offensive physical contact or bodily harm on a person that puts the person in immediate danger of or in apprehension, whether or not an actual touching or use of force on a person occurs.

\*\*\*

Ex. M at AIIC000075.

75.     The Definitions section of the Commercial General Liability Coverage Part provides, in pertinent part, as follows:

**SECTION V – DEFINITIONS**

\*\*\*

**3.**     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*\*\*

**13.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

15

14.     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.     False arrest, detention or imprisonment;

b.     Malicious prosecution;

c.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organizations goods, products or services;

e.     Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.     The use of another's advertising idea in your "advertisement"; or

g.     Infringing upon another's copyright, trade dress or slogan in your "advertisement".

***

Ex. M at AIIC000059, AIIC000061.


## THIS DISPUTE

76.     Acceptance received notice that Red Dot Arms seeks a defense and indemnity under the Policy in connection with the claims asserted against it in the Complaints filed in the Underlying Actions.

77.     Acceptance has determined through its coverage investigation that it owes no obligation to defend or indemnify Red Dot Arms in connection with the claims asserted against it in the Complaints filed in the Underlying Actions.

78.     Acceptance has advised Red Dot Arms in writing that it disclaims any obligation under the Policy to provide a defense to or indemnify it in connection with the claims asserted in the Complaints in the Underlying Actions.

79.     Acceptance now brings this action to obtain a judicial declaration that the Policy provides no defense or indemnity obligations to Red Dot Arms in connection with the claims asserted against it in the Complaints in the Underlying Actions.

## COUNT I

### (No Coverage Under Insuring Agreement A)

80.     Acceptance incorporates by reference herein paragraphs 1 through 79, as if the same were fully set forth at length.

81.     The Insuring Agreement of Coverage A – Bodily Injury and Property Damage Liability of the Commercial General Liability Part of the Policy provides, in pertinent part, that "[Acceptance] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." Ex. M at AICC000047.

82.     The Insuring Agreement of Coverage A – Bodily Injury and Property Damage Liability of the Commercial General Liability Part of the Policy provides, in pertinent part, that the insurance applies to "bodily injury" only if "the 'bodily injury' . . . is caused by an 'occurrence' . . . ." Ex. M at AICC000047.

83.     The Policy defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person,  including death resulting from any of these at any time." Ex. M at AIIC000059.

84.     The Policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Ex. M at AIIC000061.

85.     The Roberts Complaint, Sedano Complaint, Toledo Complaint, Tenorio Complaint, Sundheim Complaint, Straus Complaint, Vergara Complaint, Bennett Complaint, Rodriguez Complaint and Zeifert Complaint filed in the Underlying Actions allege the Underlying Claimants sustained emotional distress.

86.     The Complaints filed in the Underlying Actions allege that Red Dot Arms engaged in knowing violations of the law that allowed the Shooter to have unlawful possession of the Firearm.

87.     The Chupak and Turnipseed Complaints allege that the incident was foreseeable.

88.     As such, the Complaints filed in the Underlying Actions fail to satisfy the requirements of the Insuring Agreement of Coverage A of the Commercial General Liability Coverage Part of the Policy to the extent the Complaints do not seek to impose liability against Red Dot Arms for "bodily injury" caused by an "occurrence" as those terms are defined in the Policy and interpreted under the law.

89.     Pursuant to the operation of the Outdoor Commercial Definitions and Exclusion Amendment Endorsement, paragraph 2. Exclusions under **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** of the Policy was amended to provide, in pertinent part, that "[t]his insurance does not apply to  . . . "'[b]odily injury' . . . arising out of any acts committed with a 'firearm' or ammunition that is sold, distributed or transferred by any insured where such sale, distribution or transfer is in violation of ATF, federal, state or local laws or regulations for the lawful transfer of a 'firearm' or ammunition."  Ex. M at AIIC000022.

90.     The Complaints in the Underlying Actions allege that the Shooter resided in Highland Park or Highwood IL and that these municipalities prohibit the sale, transfer or possession of any assault weapon.

91.     The Complaints in the Underlying Actions further allege that the rifle at issue was an assault weapon pursuant to Highland Park and Highwood ordinances.

92.     The Complaints in the Underlying Actions further allege that, despite knowing the Shooter resided in a municipality that prohibited the possession of assault weapons, Red Dot Arms transferred the rifle to the Shooter.

93.     The Complaints in the Underlying Actions further allege that Red Dot Arms violated the National Firearms Act by transferring and selling the rifle to the Shooter without filing out the appropriate transfer forms, getting approval of the ATF forms, paying transfer taxes or registering the firearm.

94.     As a result, the claims asserted against Red Dot Arms in the Complaints filed in the Underlying Actions fall within the scope of paragraph B.8 of the Outdoor Commercial Definitions and Exclusion Amendment Endorsement of the Policy.

95.     Accordingly, Coverage A of the Commercial General Liability Coverage Part of the Policy does not afford coverage for the claims asserted against Red Dot Arms in the Underlying Actions.

WHEREFORE, Acceptance seeks a judgment that it owes no duty under Coverage A of the Commercial General Liability Coverage Part of the Policy to defend or indemnify Red Dot Arms in connection with the claims asserted against it in the Complaints filed in the Underlying Actions.

## **COUNT II**

### **(No Coverage Under Insuring Agreement B)**

96.     Acceptance incorporates by reference herein paragraphs 1 through 79, as if the same were fully set forth at length.

97. The Insuring Agreement of Coverage B – Personal and Advertising Liability of the Commercial General Liability Part of the Policy provides, in pertinent part, that "[Acceptance] will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." Ex. M at AIIC000052.

98. The Policy defines "personal and advertising injury" as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses:

    a.      False arrest, detention or imprisonment;

    b.      Malicious prosecution;

    c.      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.      Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organizations goods, products or services;

    e.      Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f.      The use of another's advertising idea in your "advertisement"; or

    **g.**      Infringing upon another's copyright, trade dress or slogan in your "advertisement".

Ex. M at AIIC000061.

99. The Complaints filed in the Underlying Actions fail to satisfy the requirements of the Insuring Agreement of Coverage B of the Commercial General Liability Coverage Part of the Policy because the Complaints do not allege damages because of "personal and advertising injury" and, therefore, do not seek to impose liability against Red Dot Arms for damages because of "personal and advertising injury" as defined in the Policy.

100.    Accordingly, Coverage B of the Commercial General Liability Coverage Part of the Policy does not afford coverage for the claims asserted against Red Dot Arms in the Complaints filed in the Underlying Actions.

WHEREFORE, Acceptance seeks a judgment that it owes no duty under Coverage B of the Commercial General Liability Coverage Part of the Policy to defend or indemnify Red Dot Arms in connection with the claims asserted against it in the Complaints filed in the Underlying Action.

## COUNT III

### (No Coverage Under Policy Pursuant To The Operation Of The Assault And Battery Exclusion Endorsement)

101.    Acceptance incorporates by reference herein paragraphs 1 through 79, as if the same were fully set forth at length.

102.    The Assault and Battery Exclusion Endorsement applies to all coverages under the Policy and provides, in pertinent part, that "[t]his insurance does not apply to any 'bodily injury'. . . arising out of any actual or alleged: . . . '[a]ssault and battery' . . . ." or "[f]ailure by any person to prevent, stop any 'assault and battery' . . . or mitigate any harmful effects of any 'assault and battery' . . . including: (1) Failure to notify law enforcement or other persons with authority or ability to prevent, stop or mitigate the harmful effects of any "assault and battery" . . ." Ex. at AIIC0075.

103.    The Assault and Battery Exclusion Endorsement further provides, in pertinent part, that "'[a]ssault and battery' means . . .[a]ny negligent or intentional physical contact with another without consent; or . . . [a]ny threat or attempt to inflict offensive physical contact or bodily harm on a person that puts the person in immediate danger of or in apprehension, whether or not an actual touching or use of force on a person occurs." Ex. M at AIIC0075.

104.    The Complaints filed in the Underlying Actions allege "bodily injury" that arises out of actual or alleged "assault or battery."

105.    The Complaints filed in the Underlying Actions allege assault and battery was the proximate cause of the underlying claimants' injuries and, therefore, no claims against Red Dot Arms for negligence, aiding and abetting or infliction of emotional distress could be sustained but for the alleged assault and battery

106.    As such, the claims asserted against Red Dot Arms in the Complaints filed in the Underlying Actions fall within the scope of the Assault and Battery Exclusion Endorsement of the Policy.

107.    Accordingly, the Commercial General Liability Coverage Part of the Policy does not afford coverage for the claims asserted against Red Dot Arms in the Underlying Actions because coverage for such claims is precluded by operation of the Assault and Battery Exclusion Endorsement.

WHEREFORE, Acceptance seeks a judgment that it owes no duty under Coverage A or B of the Commercial General Liability Coverage Part of the Policy to defend or indemnify Red Dot Arms in connection with the claims asserted against it in the Complaints filed in the Underlying Actions.

## **PRAYER FOR RELIEF**

Plaintiff Acceptance Indemnity Insurance Company hereby respectfully requests the entry of an order and judgment in its favor and against Defendant Red Dot Arms, Inc. declaring as follows:

a.  This court has jurisdiction over the parties and the subject matter of this litigation;

b.  The Policy does not provide coverage to Defendant Red Dot Arms, Inc. for the claims asserted against it in the Complaints filed in the Underlying Actions;

c.  Acceptance Indemnity Insurance Company does not owe a duty under the Policy to defend Defendant Red Dot Arms, Inc. or reimburse defense costs incurred by Defendant Red Dot Arms, Inc. in connection with the claims asserted against Red Dot Arms, Inc. in the Complaints filed in the Underlying Actions;

d.  Acceptance Indemnity Insurance Company does not owe a duty under the Policy to indemnify Defendant Red Dot Arms, Inc. in connection with the claims asserted against it in the Complaints filed in the Underlying Actions;

e.  Acceptance Indemnity Insurance Company is entitled to an award of its costs; and

f.  Such other further relief as this Court deems just and appropriate.

Respectfully Submitted,

ACCEPTANCE INDEMNITY INSURANCE COMPANY

Dated: December 19, 2022

By:     *s/James J. Hickey*
        James J. Hickey
        One of the Attorneys for Plaintiff
        Acceptance Indemnity Insurance Company

        James J. Hickey (Illinois Bar No. 6198334)
        James.Hickey@kennedyslaw.com
        Karen Andersen Moran (Illinois Bar No.6224382)
        Karen.AndersenMoran@kennedyslaw.com
        KENNEDYS CMK
        30 South Wacker Drive, Suite 3650
        Chicago, IL 60606
        Phone: (312) 800-5000
        Fax: (312) 207-2110