IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ACCEPTANCE INDEMNITY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No.   22 C 7145 |
| v. | ) ) ) | Judge Robert W. Gettleman |
| RED DOT ARMS, INC., KEELEY ROBERTS, JASON ROBERTS, LORENA REBOLLAR SEDANO, RICARDO TOLEDO, PETRA TOLEDO, JOSEFINA TOLEDO, ALEJO TOLEDO, AMELIA TENORIO, ANTONIA MEGLAR, BRUCE SUNDHEIM, PETER STRAUS, JONATHON STRAUS, SYLVIA VERGARA, LIZET MONTEZ, GABRIELA VERGARA, LAUREN BENNETT, MICHAEL BENNETT, TERRIE BENNETT, JEFFREY BENNETT, DEBORAH SAMUELS, ELLIOT SAMUELS, MIRNA RODRIGUEZ, OSCAR SANCHEZ, MICHAEL ZEIFERT, CHRISTINE ZEIFERT, ELIZABETH TURNIPSEED, and JOSHUA CHUPACK, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Acceptance Indemnity Insurance Company has brought an action for a declaratory judgment under Fed. R. Civ. 57 against its insured defendant Red Dot Arms, Inc., seeking a declaration that it has no duty to defend or indemnify Red Dot in twelve underlying lawsuits brought against Red Dot by the victims of the mass shooting that occurred at a Fourth of July parade in Highland Park, Illinois, in 2022.   The plaintiffs in those underlying lawsuits have been named as defendants in the instant action.   The complaints in the underlying lawsuits all allege (among other things) that Red Dot transferred the firearm that was used in the shooting to

Robert Crimo III ("Crimo") in violation of federal law and local ordinances, and that Crimo used the firearm to assault and batter the underlying plaintiffs.

Red Dot has sought coverage from plaintiff for the claims asserted against it in the underlying lawsuits under a Commercial Policy (the "Policy") issued to it by plaintiff for the policy period October 3, 2021, to October 3, 2022. Plaintiff brings this action seeking a judicial determination that it owes no duty under the policy either to defend or indemnify Red Dot in connection with the claims against Red Dot in the underlying lawsuits. Red Dot has filed a counterclaim against plaintiff, seeking a declaration that Red Dot has coverage under the Policy and that plaintiff has a duty to defend it in the underlying actions. The parties have filed cross-motions for summary judgment. For the reasons described below, the court grants plaintiff's motion and denies Red Dot's motion.

## BACKGROUND

Red Dot is a retail gun store. Plaintiff issued the Policy to Red Dot for the policy period October 3, 2021 to October 3, 2022. The policy provides for $1,000,000 Each Occurrence with a $2,000,000 General and Products Completed Operations Aggregate limit of liability. Coverage A of the Commercial General Liability Coverage Part provides:

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

2

      b. This insurance applies to "bodily injury
        and "property damage" only if:

      1) "The bodily injury" and "property damage" is caused
        by an "occurrence" that takes place in the "covered
        territory";
      2) The "bodily injury" or "property damage" occurs
        during the policy period; . . .

The Policy contains an Outdoor Commercial Definitions and Exclusion Amendment

Endorsement B.8, which provides that the insurance does not apply to:

"bodily injury" or "property damage" arising out of any acts
committed with a "firearm" or ammunition that is sold, distributed
or transferred by any insured where such sale, distribution or
transfer is in violation of ATF, federal, state or local laws or
regulations for the lawful transfer of a "firearm" or ammunition.

The Policy also contains an "assault and battery" exclusion that provides that the

"insurance does not apply to any 'bodily injury' or 'property damage' arising out of any actual or

alleged 'assault and battery' . . .."

The underlying complaints all allege that in July 2020 Crimo purchased on line a Smith

& Wesson M&P rifle from Bud's Gun Shop. Bud's shipped the rifle to Red Dot for Red Dot to

complete the transfer of the firearm to Crimo. The underlying complaints further allege that

Crimo lived in Highwood or Highland Park, and that ordinances enacted by both Highland Park

and Highwood make it illegal to manufacture, sell, offer or display for sale, give, lend, transfer

ownership of, acquire or possess any assault weapon or large capacity magazine. The

complaints also allege that the rifle purchased by Crimo is an assault rifle under both ordinances,

and that Red Dot transferred the rifle to Crimo knowing that he resided in a municipality that

prohibited such firearms, thereby knowingly aiding and abetting Crimo's violation of the

ordinances. The underlying complaints also allege that Red Dot violated the National Firearms

Act by transferring and selling the firearm without filling out the proper transfer forms, getting approval of the ATF, paying transfer taxes, or registering the firearm.

Finally, the underlying complaints allege that on July 4, 2022, Crimo fired more than 80 rounds into the crowd at the July 4th parade, killing seven people and injuring many others, and that Crimo's conduct was deliberate and outrageous and made with the intent to terrify, injure, maim, and kill people at the parade.

## DISCUSSION

The parties have filed cross-motions for summary judgment under Fed. R. Civ. P. 56. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden, and the court must view all facts in the light most favorable to the nonmovant and draw all reasonable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). But the nonmovant must do more than raise "some metaphysical doubt as to the material facts." Id. at 586. Rather, the nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

Under Illinois law, which the parties agree applies to this dispute, the duty to defend is much broader than the duty to indemnify. Outboard Marine Corp. v. Liberty Mut. Ins. Co., 154 Ill. 2d 90, 125 (1992). To determine whether the insurer has a duty to defend its insured, the court must compare the allegations of the underlying complaints to the policy language. Those allegations must be liberally construed in favor of the insured, and if the court determines that the allegations fall within, or potentially within, the policy's coverage, the insurer has a duty to

4

defend the insured against the underlying complaint.   Id.   An insurer may not justifiably refuse to defend its insured unless "it is clear from the face of the underlying complaint that the allegations set forth in that complaint fail to state facts that bring the case within or potentially within the insured's policy coverage.   General Agents Ins. Co. of America, Inc. v. Midwest Sporting Goods Co., 215 Ill.2d 146, 154-55 (2005).   If the underlying complaint alleges facts within or potentially within coverage, the insurer must defend even if the allegations are groundless, false, or fraudulent.   Id.

Additionally, if several theories of recovery are alleged in the underlying complaint against the insured, the insurer has a duty to defend "even if only one of several theories is within potential coverage of the policy."   Id. at 155.   Coverage does not depend on how the underlying plaintiffs characterize the insured's alleged wrong.   What is important is not the legal label that the plaintiff attaches to the insured's conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers.   Cincinnati Ins. Co. v.Eastern Atlantic Ins. Co., 260 F.3d 742, 745 (N.D. Ill. 2001).

In the instant case, the underlying complaints allege four claims against Red Dot: 1) negligence; 2) aiding and abetting Crimo's acquisition of an illegal assault rifle and the resulting mass shooting; 3) intentional infliction of emotional distress (IIED"); and 4) negligent infliction of emotional distress ("NIED").

 Plaintiff argues that it has no duty to defend Red Dot because none of the factual allegations against Red Dot that support these theories potentially fall within the policy's coverage.   Plaintiff argues that coverage for the claims is precluded by the Operation of the

Outdoor Commercial Definitions and Exclusions Amendment Endorsement B.8, which as noted above, provides that "[t]his insurance does not apply to . . . 'bodily injury' or 'property damage' arising out of any acts committed with a 'firearm' or ammunition that is sold, distributed, or transferred by any insured where such sale, distribution or transfer is in violation of ATF, federal, state or local laws or regulations for the lawful transfer of a 'firearm' or ammunition."

Construction of an insurance policy's provisions is a question of law for the court to decide.  Outboard Marine, 154 Ill.2d at 108.   The court must ascertain the intent of the parties to the contract.   To ascertain the meaning of the policy's words and the intent of the parties, the court construes the policy as a whole with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract.   Id.   If the words are unambiguous, the court gives them their plain, ordinary, and popular meaning.   Id.   If the words are susceptible to more than one reasonable interpretation, they are considered ambiguous and must be construed in favor of the insured and against the insurer that drafted the policy.   Id. at 109.

In the instant case, the exclusion is clear and unambiguous.   Coverage is excluded for bodily injury that arises out of any acts committed with a firearm that is sold or transferred in violation of any federal, state, or local law.   All of the factual allegations of Red Dot's alleged wrongdoing in the underlying complaints fall squarely within this exclusion.   The general allegations in each of the underlying complaints allege that in the summer of 2020 Red Dot transferred the rifle to Crimo after conducting a background check, verifying Crimo's identification, and that the federal transaction form and Crimo's identification would have shown that he resided in either Highwood or Highland Park, both of which prohibited him from

acquiring or possessing the rifle.   In addition, the specific counts brought against Red Dot allege

that:

> 1) it was subject to the general duty imposed on all persons and entities to act reasonably and not expose others to reasonably foreseeable risks of injury; 2) it had a duty to exercise reasonable care in marketing, distributing, and selling firearms and large capacity magazines, and to refrain from engaging in any activity creating reasonable foreseeable risk of injury to others; 3) in June or July 2020, Red Dot transferred the rifle to Crimo after conducting a background check and verifying his identification; 4) both the federal transaction form and Crimo's identification should have shown that he resided in either Highland Park or Highwood, both of which prohibited Crimo from acquiring or possessing an assault weapon like the rifle; 5) "despite knowing that [Crimo] resided in a municipality that prohibited the possession of assault weapons, Red Dot Arms transferred the [rifle] to [Crimo], thereby knowingly aiding and abetting the violation of the ordinances"; 6) Red Dot is a federally licensed gun dealer and is therefore charged with and obligated to know the relevant firearm laws; 7) Red Dot knowingly violated both the NFA and GCA by transferring and selling weapons without filling out the appropriate transfer forms, getting ATF approval of the forms, paying occupational and transfer taxes, or registering firearms; 8) Red Dot "transferred the rifle without complying with any of the NFA's requirements and had Red Dot complied with the requirements of the NFA, [Crimo] would not have been able to access the weapon"; 9) Red Dot's "negligence and knowing violations of law were a direct and proximate cause of the harm to Plaintiffs, by causing [Crimo] to gain unlawful possession of an assault weapon, which he used to shoot and terrify Plaintiffs; and 10) "[a]s a direct and proximate result of the aforementioned conduct and breach of duty, Plaintiffs have sustained and will sustain physical pain, mental suffering, loss of

enjoyment of life, anxiety, and severe emotional distress."

There are no other factual allegations made against Red Dot in the underlying complaints. Thus, each of the claims asserted against Red Dot are premised entirely on Red Dot having transferred the firearm in violation of Federal and local law. Indeed, the underlying plaintiffs allege that absent Red Dot's violation of the law, Crimo would not have gained possession of the rifle and would not have been able to "shoot and terrify Plaintiffs." Thus, they allege that their bodily injury arose out of acts committed with a firearm sold or transferred in violation of federal and local law. As such, the underlying claims fall squarely within the exclusion, and plaintiff has no duty to defend or indemnify Red Dot.

Red Dot argues that the exclusion does not clearly apply "because the underlying complaints allege negligence apart from a violation of laws." It suggests that there is a "potential that Red Dot filled out the proper paperwork and complied with all ordinances, and yet still faces liability for negligently transferring the firearm to [Crimo]." However, there are no factual allegations of any wrongdoing or negligence by Red Dot except for violating the ordinances, and it is the factual allegations, not the legal label that is important. Cincinnati Ins. Co. v.Eastern Atlantic Ins. Co., 260 F.3d at 745. Absent such allegations, there is no conduct alleged in the underlying complaints that would arguably be covered by the Policy.

Red Dot also argues that it is inappropriate for this court to determine that the exclusion applies because "the question whether the firearm sale violated any law cannot be resolved in this declaratory suit when the question is one of the ultimate issues on which recovery is predicated in the underlying case." The court agrees with this statement of law. Red Dot is

correct that it would not be appropriate for this court to consider the merits of the underlying

allegations. See Maryland Cas. Co. v. Peppers, 64 Ill.2d 187, 197 (1976).   But, this court need

not determine if Red Dot violated the ordinances to determine if plaintiff has a duty to defend.

It is the factual allegations of the underlying complaints that the court compares to the terms of

the Policy.   And, as already noted, the only factual allegations against Red Dot are that it

transferred the firearm in violation of the ordinances and federal law.   Consequently, the court

concludes that plaintiff owes no duty to defend Red Dot in the underlying actions.

Moreover, even if the B.8 exclusion somehow does not apply (it does), coverage for the

claims asserted against Red Dot are precluded by operation of the policy's assault and battery

exclusion which provides that the "insurance does not apply to any 'bodily injury' or 'property

damage' arising out of any actual or alleged 'assault and battery' . . .."   The injuries asserted by

the plaintiffs in the underlying complaints all arise from Crimo's alleged assault and battery of

the plaintiffs.   Red Dot argues that the exclusion does not apply because although the underlying

plaintiffs allege that Crimo's assault and battery was a proximate cause of their injuries, they also

allege that Red Dot's sale of the firearm to Crimo was a proximate cause of their injuries and that

there can be more than one proximate cause.   See U.S. Fid. And Guar. Co. v. State Farm Mut.

Auto. Ins. Co., 152 Ill. App. 3d 46, 49 (1st Dist. 1987).   According to Red Dot, USF&G stands

for the proposition that for an injury to be excluded from coverage, the insurer must prove that

the underlying injury was caused solely by a proximate cause excluded under the policy.   Id. at

48-49.  But, Illinois courts have shown reluctance to follow USF&G due to "its assimilation of

principles from tort law into the analysis of an insurance policy.   "The issue before a court

ruling on a complaint for declaratory relief is the interpretation of the insurance policy in

accordance with the plain meaning of the policy's terms." <u>Allstate Ins. Co. v. Smiley</u>, 276 Ill. App.3d. 971, 982 (2nd Dist. 1996). "By intermingling contract and tort principles, <u>USF&G's</u> approach fails to recognize that tort liability on the part of the insured establishes contractual liability on the part of the insurer only where the policy affords coverage, and that determination is subject to the rules of contract construction, and not tort principles." <u>Id.</u> (internal quotations omitted).

The court therefore rejects Red Dot's argument that the terms of the assault and battery exclusion to do not apply to the underlying plaintiff's claims against it. Consequently, the court grants plaintiff's motion for summary judgment and denies Red Dots motion for summary judgment.

<u>**CONCLUSION**</u>

For the reasons described above, the court grants plaintiff's motion for summary judgment [50] and denies defendant Red Dot Arms' motion for summary judgment [54]. The court thus issues judgment declaring that plaintiff has no duty to defend or indemnify defendant Red Dot Arms from the claims in the underlying lawsuits.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE:   November 14, 2023**

10